UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ERIC LOTTIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:16CV860-PPS |
| | ) | |
| NANCY BERRYHILL, Acting Commissioner | ) | |
| of the Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Eric Lottie appeals the denial of disability insurance benefits and supplemental security income benefits by the Commissioner of the Social Security Administration. Lottie has been a construction laborer, a plumber and a prisoner. [AR at 263, 62.][2] He has at times been homeless, staying with friends or family, or sleeping in his car. [AR at 292-95.] When he applied for benefits in 2012, he alleged that he was disabled from working by carpal tunnel syndrome in both hands, lower back and hip pain, and a torn Achilles tendon in his right ankle, and also suffered from depression. [AR at 251, 286.]

Lottie had a hearing before an administrative law judge on August 5, 2015, at which Lottie appeared without an attorney and gave testimony. [AR at 43-78.] The ALJ

---

[1] On January 23, 2017, Nancy Berryhill became the Acting Commissioner of Social Security. Fed.R.Civ.P. 25(d) provides for Berryhill's automatic substitution in place of her predecessor, Carolyn Colvin.

[2] The administrative record [AR] is found in the court record at docket entry 10, and consists of 525 pages. I will cite to its pages according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

issued a written decision denying Lottie's claim for benefits on November 16, 2015. [AR 18-30.] The ALJ found that Lottie has severe impairments of degenerative disc disease, carpal tunnel syndrome, obesity and affective disorder. [AR at 21.] The ALJ concluded that Lottie's severe impairments do not conclusively establish disability by meeting or medically equaling the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [*Id.*] The ALJ found that Lottie possessed the residual functional capacity to perform light work, that he was capable of performing jobs that exist in significant numbers in the national economy, and that Lottie is not disabled. [AR at 23, 28.]

Lottie asks me to reverse the ALJ's decision or remand the case for further proceedings by the Social Security Administration. My review of the ALJ's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). I cannot reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "In rendering a decision, an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015), quoting *Schmidt v.*

2

*Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).  Lottie makes four arguments in support of his appeal.

## Issue One:  Medical Opinion Evidence

Lottie was sent to see consultative examiner Dr. B.T. Onamusi in January 2013, and Dr. Onamusi's report is part of the administrative record.  Exh. 2F.  Based upon Lottie's reports of his medical history and functional capabilities, and upon a physical examination, Dr. Onamusi briefly concluded:  "Based on information obtained during this examination it is my opinion that claimant should be able to engage in sedentary level activities as defined in the Dictionary of Occupational Titles."  [AR at 358.]

Two different sets of State agency consultants reviewed Lottie's file in February 2013 and July 2013.  Exh. 2A, 5A.[3]  This included their review of the report of Dr. Onamusi as a consultative examiner.  In March 2013, Dr. Ruiz assessed Lottie as able to lift or carry 50 pounds occasionally and 25 pounds frequently, to stand, walk or sit for a total of about 6 hours in an 8-hour workday, and to have few postural limitations.  As explanation, Dr. Ruiz noted that the record contained no treating physician records, and cited to a number of findings in the medical record that he believed supported his RFC assessment.  [AR at 93-94.]  He also noted that no problems with walking, standing or sitting were noted at Lottie's "face-to-face DDB interview" and he was in no apparent distress doing those things.  [AR at 94.]  Based on these findings in the record, Dr. Ruiz

---

[3] As often occurs in SSA administrative records, the July 2013 report appears twice (in a row) in the administrative record, as Exhibit 5A and Exhibit 6A.

3

concluded that Lottie's claimed limitations were "[n]ot fully credible." [*Id*.] Dr. Ruiz reconciled his conclusions with the more restrictive opinion of Dr. Onamusi this way: "The opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." [AR at 94.] Dr. Corcoran's Disability Determination Explanation in July 2013 parrots the same RFC findings and (disappointingly) the same explanation as Dr. Ruiz's from 4 months earlier. [AR at 104-105.]

After earlier setting forth Dr. Onamusi's findings on his physical examination of Lottie, the ALJ later noted Dr. Onamusi's conclusion that Lottie could perform sedentary level work. The ALJ gave only little weight to that opinion as "inconsistent with the medical record as a whole, which shows generally normal and unremarkable physical examination findings." [AR at 25, 27.] No explanatory discussion is included in support of this critical determination by the ALJ. Instead, he merely cites to a list of exhibits in the administrative record, including Dr. Onamusi's own report. [AR at 27.]

This approach does not provide an explanation of the ALJ's analysis sufficient to permit a meaningful review. Furthermore, the skeletal citation only to a list of exhibits that support the ALJ's conclusion contrary to the examining physician may constitute the sort of "cherry-picking" of supportive evidence that the Circuit has repeatedly criticized, as well as a failure to acknowledge and address significant contrary evidence. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). The scanty treatment fails to provide the required "logical bridge" between

4

the evidence and the ALJ's conclusion that Dr. Onamusi's opinion should be given little weight, and less weight than that of Drs. Ruiz and Corcoran.

Besides challenging the adequacy of the ALJ's analysis of Dr. Onamusi's opinion, Lottie also challenges the ALJ's acceptance of the conclusions of the non-examining doctors Diaz and Corcoran over that of Dr. Onamusi, who had the benefit of examining Lottie. The applicable regulations provide that, generally speaking, more weight is given to the opinion of a doctor who examined the claimant than to one who has not. 20 C.F.R. §404.1527(c)(1), 416.927(c)(1). Nonetheless, "[a]s a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). But "rejecting or discounting the opinion of the agency's own examining physician...can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Id. See also Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice.") These authorities highlight the inadequacy of the ALJ's treatment of the opinions of the three consulting doctors.

"In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ's use of boilerplate language and sweeping characterization of multiple medical records does

5

not constitute even a "minimal articulation" of reasons for his relative weighing of Dr. Onamusi's opinion versus that of Doctors Ruiz and Corcoran. *Skarbek v. Barnhart*, 390 F.3d 500, 503-04 (7th Cir. 2004). The ALJ's failure to "provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor" compels a remand of this case for further consideration by the Commissioner. *Beardsley*, 758 F.3d at 839.

**Issue Two:  The ALJ's RFC Assessment**

Lottie's second challenge to the ALJ's decision is that he "failed to identify any evidence that supported the functional limitations" that he included in his assessment of Lottie's Residual Functional Capacity. RFC is the disability term for the description of what a claimant is able to do despite functional limitations from medical impairments, and represents the Commissioner's determination of the individual's "capacity to perform work-related physical and mental activities." POMS DI 24510.001(A)(1). Here the ALJ's RFC assessment found that Lottie:

- can lift or carry up to 20 pounds occasionally and 10 pounds frequently;
- has no limitations on the amount of time he is able to sit, stand or walk in an 8-hour workday but needs to alternate his position between sitting, standing and walking for no more than five minutes out of every hour;
- can occasionally climb ramps and stairs, stoop, kneel, balance, crouch and crawl, but never climb ladders, ropes or scaffolds;

- can use his upper extremities to frequently push, pull and perform gross and fine manipulation, but cannot perform forceful grasping or torqueing;

- can never reach overhead using his left upper extremity, but can frequently reach in all other directions with it;

- is limited to simple routine tasks and no more than simple decisionmaking and judgment; and

- is limited to no more than occasional and minor changes in the work setting.

[AR at 23.] Based on this RFC assessment, the ALJ ultimately concluded that Lottie is capable of performing "light" work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b). [*Id.*]

In making this assessment of Lottie's capabilities, the ALJ – as earlier discussed – gave only "little weight" to Dr. Onamusi's opinion and RFC assessment. [AR at 27.] He gave "partial weight" to the non-examining consultants' opinions about Lottie's physical limitations, saying that they were "supported by the claimant's overall normal examination findings, but do not completely reflect the claimant's current residual functional capacity." [*Id.*] As with the ALJ's consideration of Dr. Onamusi's opinion, this summary conclusion is supported only by a list of citations to portions of the administrative record, without meaningful explanatory discussion. [*Id.*] The particulars of the ALJ's RFC differed in every major category – sitting, standing, walking, lifting and carrying – from all the various assessments before him – Dr. Onamusi's, Dr. Ruiz's, Dr. Corcoran's and Lottie's own. This suggests a need for the ALJ to explain the basis for his

7

determinations, and how they were supported by substantial evidence. In addition, there are aspects of the ALJ's RFC – such as Lottie's need to alternate his position every hour, the prohibition on torqueing, and the limitation on "changes in the work setting" – for which I find no explanation in the ALJ's decision. Because of the remand on Issue One, the Commissioner will revisit the RFC analysis, and have a second opportunity to better articulate the reasoning that bridges the medical and other evidence with conclusions as to Lottie's RFC and his ability to engage in employment activities.

**Issue Three: Credibility of Claimant's Subjective Allegations**

Lottie contends that the ALJ "erred by failing to analyze the credibility of Mr. Lottie's allegations with a level of detail that permits the Court to conduct meaningful judicial review." [DE 13 at 19.] As the Court of Appeals has noted, "the cases make clear that the ALJ must *specify* the reasons for his [credibility] finding so that the applicant and subsequent reviewers will have a fair sense of the weight given to the applicant's testimony." *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (emphasis in original). The ALJ failed to meet this standard here.

Lottie's subjective allegations concerning his severe impairments would, at a minimum, have included pain in his hands and his lower back, and its impact on the use of his hands and his ability to sit and stand. The ALJ's decision contains only briefly stated conclusions dismissing those subjective allegations. One conclusion asserts that Lottie's daily activities are inconsistent with his allegations of disabling symptoms. [AR at 24.] A second is a boilerplate assertion that Lottie's subjective complaints have been

8

evaluated in accordance with the governing regulations and found to be not fully credible. [*Id*.] The third is the ALJ's conclusion that the medical evidence is inconsistent with Lottie's subjective allegations. [*Id*. at 27-28.]

What is lacking is explanation of the ALJ's analysis – why certain facts of record were found to be inconsistent with Lottie's claims of pain or other limitations. The Commissioner's response to this ground for remand necessarily suffers from the same level of generality. Because the matter is being remanded for further consideration, no more need be said but that the Commissioner should be more mindful of the obligation to "competently explain an adverse-credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015), quoting *Minnick*, 775 F.3d at 937.

**Issue Four: Failure to Develop the Vocational Expert's Testimony**

Finally, Lottie argues that the testimony of the vocational expert required further inquiry by the ALJ. More specifically, Lottie contends that the expert "testified that some of his opinions were not covered by the Dictionary of Occupational Titles, but were based on his experience," and that this gave rise to the ALJ's duty to inquire about the expert's experience. [DE 13 at 24.] The principal case relied upon by Lottie does not support his argument on the record before me. In *Brown v. Colvin*, 845 F.3d 247 (7th Cir. 2016), the Court of Appeals referenced its repeated holding that "if a vocational expert's testimony appears to *conflict* with the DOT, the ALJ 'must obtain "a reasonable explanation for the apparent conflict."'" *Id*. at 254-55 (emphasis in original) (internal

9

citations omitted). Here the ALJ asked the vocational expert whether any of his testimony conflicted with the DOT, and the expert replied that it did not conflict, but explained the basis of his answers on matters not specifically addressed by the DOT. No conflict with the DOT being shown, *Brown* does not support a determination that the ALJ erred in his handling of the vocational expert.

**Conclusion**

An ALJ must build a logical bridge from the evidence to his conclusion. *Brown v. Colvin*, 845 F.3d at 251; *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). In the absence of a meaningful explanation of his reasons for discounting the examining consultant physician's opinion, I can't affirm the decision. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) ("the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues"). By his successful challenge to the ALJ's dismissal of Dr. Onamusi's opinion, Lottie demonstrates that the ALJ's findings and conclusions about the severity of his impairments and his residual functional capacity are not supported by substantial evidence. Even using the applicable deferential standard of review, I conclude that the ALJ's determinations are not supported by relevant evidence such as a reasonable mind might accept as adequate to support his conclusions. *Moore*, 743 F.3d at 1120-21. The Commissioner's final decision denying Lottie's application for disability benefits will be reversed and remanded for further consideration.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Eric Lottie's application for Social Security Disability benefits is REVERSED AND REMANDED for further proceedings consistent with this opinion.

The Clerk shall enter judgment in favor of plaintiff and against defendant.

**SO ORDERED**.

ENTERED: March 5, 2018.

                                /s/ Philip P. Simon
                                **PHILIP P. SIMON, JUDGE**